USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/7/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                            :

TRUSTEES OF THE NEW YORK CITY    :
DISTRICT COUNCIL OF CARPENTERS  :
PENSION FUND, WELFARE FUND,       :    1:24-cv-6867-GHW
ANNUITY FUND, AND APPRENTICESHIP, :
JOURNEYMAN RETRAINING,           :    MEMORANDUM OPINION &
EDUCATIONAL AND INDUSTRY FUND, *et* :          ORDER
*al.*                                                    :
                                                            :
                           Petitioners,  :
                                                            :
                    -v-                             :
                                                            :
FLOOR EXPO, LTD.,                         :
                                                            :
                           Respondent.  :
                                                            :
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

       The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; the Trustees of the New York City Carpenters Relief and Charity Fund (together, the "Funds"); and The Carpenter Contractor Alliance of Metropolitan New York (the "Union," and together with the Funds, "Petitioners") commenced this action to confirm an arbitration award obtained against Floor Expo, Ltd. ("Floor Expo" or "Respondent") pursuant to Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. For the following reasons, the award is confirmed.

## I.    BACKGROUND

     On or about May 6, 2011, Floor Expo entered into an agreement (the "International Agreement") with the United Brotherhood of Carpenters and Joiners of America (the "UBCJA"). In the agreement, Floor Expo "agrees . . . to comply with the contractual wages, fringe benefits, hours and other working conditions established between the UBCJA affiliates and the employers or recognized employer agencies in the localities in which [Floor Expo] does any work within the

jurisdiction of the UBCJA." Dkt. No. 1-1, International Agreement, art. I; Dkt. No. 1-2, Addendum and Signature Pages; Dkt. No. 1, Verified Petition to Confirm an Arbitration Award (the "Petition"), ¶ 9. The International Agreement also provides that "[p]ayment of annuity, pension and/or health and welfare contributions for an employee's work in each locality shall be made to such funds and in such amounts as are identified in the applicable collective bargaining agreement." International Agreement, art. II; Petition ¶ 10.

The applicable collective bargaining agreement (the "CBA") specifies the amount that Floor Expo must contribute to the Funds for all covered employees. Dkt. No. 1-3, CBA, art. XI. The CBA also requires Floor Expo to furnish its books and payroll records when requested by the Funds for the purpose of completing an audit." CBA, art. XI, § A; *see also* Dkt. No. 1-8, Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"), § IV(1) ("The Outside Accounting Firms engaged by the Funds shall periodically review and/or audit the books and records of all the employers bound by or signatory to a collective bargaining agreement with the [Union] or any other agreements under which they are obligated to contribute to the Funds."). The CBA further binds Floor Expo to "all the terms and conditions of the Agreements and Declarations of Trust, as amended, governing each of the Funds . . . and [to] all By-Laws, rules, procedures and policies adopted to regulate each of said Funds, including but not limited to the [Collection Policy]." CBA, art. XI, § D; *see also* Petition ¶ 16.

The Collection Policy provides that "[e]xcept as otherwise provided in this Policy, legal action to collect delinquencies shall generally be in the form of arbitration." Collection Policy § VI(1). In the event "formal proceedings are instituted" and the "court renders a judgment in favor of [the] Funds," the Funds are entitled to collect the unpaid contributions; "interest on the unpaid contributions at the prime rate of Citibank plus 2%"; "an amount equal to the greater of – (a) the amount of the interest charges on the unpaid contributions . . . , or (b) liquidated damages of 20% of

2

the amount of the unpaid contributions"; and "reasonable attorney's fees and costs of the action." CBA art. XI, § G; *see also* Collection Policy §§ IV(11), V(4)–(6). Additionally, the employer is responsible for "the entire cost of a payroll review and/or audit." Collection Policy § IV(11).

The Funds conducted an audit of Floor Expo's books and payroll records covering the period of December 25, 2021 through September 30, 2023 (the "Audit") to determine whether Floor Expo had complied with its contribution requirements. Petition ¶ 24. "A dispute arose between the parties when Respondent failed to pay the Audit findings." *Id.* ¶ 25. Pursuant to the CBA and the Collection Policy, Petitioners initiated arbitration. *Id.* ¶ 26. Steven C. Kasarda (the "Arbitrator") notified Floor Expo of the arbitration by mailing a notice of hearing to Floor Expo on March 26, 2024. Dkt. No. 1-11, Opinion and Default Award of Arbitrator (the "Award"), at 1. The Arbitrator conducted a hearing on April 18, 2024. *Id.* At the hearing, Petitioners appeared through counsel and submitted testimony and other evidence in support of their claims. *Id.* at 1–2. No representative appeared at the hearing on behalf of Floor Expo. *Id.* at 2. Because Petitioners "submitted proof that [Floor Expo] had legally sufficient notice of [the] proceeding and the claims against it," the Arbitrator found Floor Expo to be in default and "proceeded to hear the testimony and take evidence" regarding Petitioners' claims. *Id.* at 1–2.

The Arbitrator issued a decision on May 2, 2024. *See id.* In it, the Arbitrator determined that the "uncontroverted testimony and evidence" established that Floor Expo was bound to the CBA and was thus required "to make certain payments to Fringe Benefit Trust Funds." *Id.* at 2. The Arbitrator found that Floor Expo was "delinquent in Fringe Benefit monies due under its written agreement." *Id.* The Arbitrator awarded Petitioners $20,964.30, which consisted of: (1) $9,110.71 in unpaid contributions; (2) $1,462.05 in interest; (3) $1,822.14 in liquidated damages; (4) $74.30 in promotional fund contributions; (5) $1,500 in attorneys' fees; (6) $5,578.65 in audit costs; (7) $400 in court costs; (8) $16.45 in non-audit late payment interest; and (9) a $1,000 arbitration fee. *Id.* at 2–3.

Furthermore, the Arbitrator determined that 10.5 percent interest would accrue from the date the Award was issued. *Id.* at 3.

On September 11, 2024, Petitioners commenced the instant action to confirm the Award. Dkt. No. 1. Petitioners request that the Court affirm the Award and award judgment in favor of Petitioners and against Respondent in the amount of (a) $20,964.30 plus interest accrued at an annual rate of 10.5 percent since the date the Award was issued; (b) $534.40 in costs from the proceedings; (c) $5,117.50 in attorneys' fees; and (d) post-judgment interest at the statutory rate. Petition at 8; *see also* Dkt. No. 11-1.

Petitioners request attorneys' fees for a total of 17.3 hours of work. Dkt. No. 11-1. Petitioners' counsel billed at the rate of $410 per hour for work performed by Maura Moosnick, a partner at Virginia & Ambinder, LLP ("V&A"); $310 per hour for work performed by Marlena Smith, an associate at V&A; and $155 per hour for work performed by a legal assistant. Petition ¶¶ 37-38; *see also* Dkt. No. 11-1. The "rates are the result of negotiations between V&A and the Funds." Petition ¶ 39.

## II.     LEGAL STANDARD

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-04421 (ENV)(RLM), 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

The Court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016)

4

(quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).  Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.*  It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537.  Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (noting that an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case" and that "[o]nly a barely colorable justification for the outcome reached by the arbitrator[] is necessary to confirm the award" (internal quotation marks omitted)).

Furthermore, "an arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." *Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999); *see also Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)).  "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

When a petition to confirm an arbitration award is unopposed, courts should generally treat "the petition and accompanying record . . . as akin to a motion for summary judgment." *Gottdiener*, 462 F.3d at 109.  Thus, like unopposed summary judgment motions, unopposed confirmation

5

petitions "must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

### III.   DISCUSSION

The unopposed evidence submitted by Petitioners shows that Petitioners are entitled to confirmation of the Award, post-judgment interest, and attorneys' fees and costs.

#### A.   Confirmation of the Arbitration Award

There is no reason to believe that Petitioners procured their Award through fraud or dishonesty, or that the Arbitrator disregarded the CBA or acted outside the scope of his authority as arbitrator. Rather, the record indicates that the Arbitrator based his award on undisputed evidence that Floor Expo was delinquent in making contributions to the Funds as required by the CBA. *See* CBA art. VI, XI; *see also* Collection Policy at 9–10. The record also indicates that the Arbitrator based the amount of his award of principal, interest, liquidated damages, and various costs on relevant provisions in the agreements and on undisputed testimony. *See* Award at 1–3. Accordingly, the Court grants Petitioners' motion and confirms the Award, including pre-judgment interest at a rate of 10.5 percent per annum from the date of the Award through the date of judgment in this action.

#### B.   Post-Judgment Interest

Petitioners further request post-judgment interest accruing from the date of judgment until Floor Expo pays in full. Petition at 1. Under 28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory," *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013), and this mandate applies when confirming arbitration awards. *See, e.g.*, *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–01 (2d Cir. 2004). Therefore, the Court grants Petitioners' request for post-judgment interest. Post-judgment interest shall accrue at the statutory rate from the date judgment is entered until payment is made in full.

### C. Attorneys' Fees and Costs of Bringing this Petition

Petitioners also seek to recover reasonable attorneys' fees and costs incurred by bringing this petition. Petition ¶¶ 34–42. "[I]n a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). Section 301 of the LMRA does not provide for recovery of attorneys' fees. *See id.* "Nevertheless, because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of an arbitration award refuses to abide by an arbitrator's decision without justification." *Abondolo v. H. & M.S. Meat Corp.*, No. 07-cv-3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (internal quotation marks omitted) (quoting *N.Y. City Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, No. 03-cv-5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003)).

"A party's failure to comply immediately with an arbitration award does not necessarily warrant an award of attorney's fees." *Id.* But courts have found such an award permissible where "the party challenging the award has refuse[d] to abide by an arbitrator's decision without justification." *First Nat'l Supermarkets, Inc., v. Retail, Wholesale & Chain Store Food Emps. Union, Local 338*, 118 F.3d 893, 898 (2d Cir. 1997); *see also Ceona PTE Ltd. v. BMT Giant, S.A. De C.V.*, No. 16-cv-4437, 2016 WL 6094126, at *3 (S.D.N.Y. Oct. 19, 2016) (awarding attorneys' fees and costs to petitioner seeking confirmation of an arbitration award where the respondent "failed to satisfy the [f]inal [a]ward, and has not responded to [the petitioner's] petition in this action"); *Herrenknecht Corp. v. Best Road Boring*, No. 06-cv-5106, 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (awarding attorneys' fees and costs to petitioner in unopposed petition to confirm an arbitration award where respondent "offered no justification for refusing to comply with the decision of the arbitrator").

Here, an award of attorneys' fees and costs is justified. By entering into the collective

bargaining agreement, Floor Expo agreed to submit all disputes to binding arbitration. The Collection Policy explicitly entitled Petitioners to recover attorneys' fees incurred while "enforcing the Board of Trustees' rights to payroll reviews and/or audits."[1] Collection Policy § V(6). Furthermore, the CBA provides that "upon the confirmation the arbitrator's award, . . . the prevailing party shall be entitled to receive all court costs in each proceeding as well as reasonable attorneys' fees." CBA art. XIV, § 5. Floor Expo has neither complied with the Award nor provided any justification for its failure to do so. For these reasons, the Court finds that it is just and reasonable to award Petitioners reasonable attorneys' fees and costs pursuant to bringing this action.

To calculate reasonable attorneys' fees, "district courts use the lodestar method—hours reasonably expended multiplied by a reasonable hourly rate." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). "A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[I]t is within the Court's discretion to reduce the requested rate" when the Court finds the rate unreasonable in the relevant market. *Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Stevenson Contracting Corp.*, No. 05-cv-5546, 2008 WL 3155122, at *9 (S.D.N.Y. June 19, 2008) (citing *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)), *report and recommendation adopted*, No. 05-cv-5546, 2008 WL 2940517 (S.D.N.Y. July 29, 2008). To assist the Court in determining the appropriate award, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d

---

[1] Courts have also awarded attorneys' fees when there is a contractual basis for doing so. *See New York City Dist. Council of Carpenters Pension Fund v. Dafna Const. Co.*, 438 F. Supp. 2d 238, 242 (S.D.N.Y. 2006) (awarding attorneys' fees in confirming an arbitration award "because the Agreement itself require[d] [respondent] to pay attorneys' fees incurred by the [t]rustees in seeking confirmation").

149, 173 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded" from the calculation of a reasonable fee. *Id.* (quoting *Hensley*, 461 U.S. at 434).

Petitioners' request for $5,117.50 in attorneys' fees is reasonable. *See* Dkt. No. 11-1. Petitioners submitted invoices documenting the specific tasks performed, the number of hours worked in total (17.3), and hourly rates for the two attorneys and the legal assistant who worked on the case. *See id.* These are satisfactory records of the attorneys' efforts and sufficiently set forth the specific fees and costs incurred while seeking confirmation of the Award. *See id.* Furthermore, these fees and costs "are the result of negotiations between [counsel] and the Funds" for these legal services. Petition ¶ 39. The Court also concludes that 17.3 hours is a reasonable number of hours worked given the description of the tasks performed.

The fees are based on the following rates: $410 per hour for Ms. Moosnick, a partner at the firm who graduated from law school in 2021; $310 per hour for Ms. Smith, an associate at the firm who graduated from law school in 2018; and $155 per hour for the legal assistant. *See id.* ¶¶ 37-38; *see also* Dkt. No. 11-1. Ms. Moosnick's rate is reasonable given that her "primary practice area is ERISA litigation, and she routinely handles arbitration hearings and petitions to confirm arbitration awards." Petition ¶ 38; *see N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (noting that the rate of $425 per hour for partners in 2009 was a reasonable rate commensurate with the costs of similar work in the district for LMRA cases); *Watkins v. Smith*, No. 12-cv-4635, 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) ("In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases."). Ms. Smith's rate of $310 is reasonable for an associate with 6–7 years of experience. *See 32BJ N. Pension Fund v. Sedgwick & N. Halls Housing Development Fund Co., Inc.*, 24-cv-3674, 2025 WL 37563, at *5 (S.D.N.Y. Jan. 6, 2025) ("Courts in this district have also awarded rates

between $250.00 and $350.00 for associates with approximately five years of experience."). The requested rate of $155 per hour for the work performed by legal assistants is also reasonable. *See, e.g.*, *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. and Indus. Fund v. Prime Contractors, Inc.*, No. 23-cv-872 (PAE), 2023 WL 2823020, at *4 (S.D.N.Y. Apr. 7, 2023) (finding an hourly rate of $155 per hour reasonable for legal assistants).

Finally, Petitioners request the reimbursement of $534.40 in court costs resulting from serving Floor Expo with the petition to confirm the arbitration award and court fees. *See* Dkt. No. 11-1. Courts in this district routinely permit the recovery of such costs. *New York City & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16-cv-1115, 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016). Petitioners are therefore entitled to recover $5,117.50 in attorneys' fees and $534.40 in costs.

### IV. CONCLUSION

For these reasons, the petition to confirm the arbitration award is GRANTED. The Clerk of Court is directed to enter judgment for Petitioners in the amount of $20,964.30, plus prejudgment interest calculated at 10.50 percent per annum from May 2, 2024 through the date of judgment, together with attorneys' fees in the amount of $5,117.50 and costs in the amount of $134.40. Post-judgment interest shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961 from the date judgment is entered until payment is made in full. The Clerk of Court is further directed to close this case.

SO ORDERED.

Dated: February 7, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge